UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20528-CIV-ALTONAGA/Brown

FUSILAMP, LLC,

      Plaintiff,

vs.

LITTELFUSE, INC., *et al.*,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on the Combined Motion to Dismiss Count V and Motion to Stay the Instant Action (the "Motion") [D.E. 15] of Defendant Littelfuse, Inc. ("Littelfuse"), filed April 21, 2010. The Court has carefully considered the parties' written submissions and the applicable law.

**I. BACKGROUND**

This case originates from United States patent No. 5,598,138 (the "'138 Patent"), which was originally issued by the United States Patent and Trademark Office ("USPTO") to Joseph P. Jaronczyk, Jr. ("Jaronczyk") in January 1995. (*See* Compl. [D.E. 1] ¶ 10). In the fall of 2000, Jaronczyk sold the '138 Patent, in equal parts, to Miguel Angel Gianelli ("MA-Gianelli") and Defendant, Norberto Julio Chirkes ("Chirkes"). (*See id.* ¶¶ 11–12). Later, in November 2001, Chirkes sold his 50% interest in the '138 Patent to Fusilamp, S.A. ("Fusilamp Panama"), and MA-Gianelli sold his 50% interest, in equal parts, to Alfedo Eduardo Gianelli, Mariano Gianelli, and Diego Gianelli (the "Gianellis"). (*See id.* ¶¶ 14–15). Recently, in February 2010, both Fusilamp

CASE NO. 10-20528-CIV-ALTONAGA/Brown

Panama and the Gianellis sold their interests in the '138 Patent to the Plaintiff, Fusilamp, LLC ("Fusilamp, USA"). (*See id.* ¶ 31).

Fusilamp, USA alleges after Chirkes sold his interest in the '138 Patent, that Chirkes represented to Defendant, Catalina Performance Accessories, Inc. ("Catalina"), that he was the 50% owner of the '138 Patent and entered into an exclusive licensing contract for the useful life of the '138 Patent with Catalina. (*See id.* ¶ 16). In October 2003, before the United States District Court for the Southern District of New York, Fusilamp Panama and MA-Gianelli entered into a contractually binding settlement agreement (the "Settlement Agreement") with Catalina that granted Catalina an exclusive license for the useful life of the '138 Patent. (*See id.* ¶ 17). Later, in January 2005, the Gianellis also granted Catalina an exclusive license for the useful life of the '138 Patent. (*See id.* ¶ 18).

In April 2006, Catalina notified MA-Gianelli that it would be initiating a patent infringement suit against Littelfuse. (*See id.* ¶ 20). Catalina asserted it had already spent $15,000 in attorney's fees preparing for the lawsuit and stated it would be withholding any contractual royalties that were due to offset the incurred and expected litigation costs, which Catalina estimated would total more than $400,000. (*See id.* ¶¶ 20–21). In June 2006, Catalina offered to purchase the Gianellis' interest in the '138 Patent for $50,000. (*See id.* ¶ 22). Later that same month, Littelfuse acquired Catalina for $4,500,000. (*See id.* ¶¶ 24–25).

On July 1, 2006, Catalina failed to pay the Gianellis the royalty payment due for the '138 Patent. (*See id.* ¶ 26). Later that month, Littelfuse wired $5,000 in unsolicited funds to the Gianellis, which the Gianellis returned. (*See id.* ¶ 27). No further payments were made by either Catalina or

2

CASE NO. 10-20528-CIV-ALTONAGA/Brown

Littelfuse.  (*See id.*).  On January 15, 2010, the Gianellis gave Littelfuse and Catalina five days to either pay royalties in arrears or have their license terminated.  (*See id.* ¶ 28).  On January 25, 2010, the Gianellis notified Littelfuse and Catalina that their exclusive licence to the '138 Patent was terminated.  (*See id.* ¶¶ 29–30).

In early February 2010, Littelfuse filed a request for an *ex parte* reexamination of the '138 Patent with the USPTO, which was recently granted.  (*See* Mot. 7; Notice [D.E. 19] 1).  On February 19, 2010, Fusilamp, USA filed a five count complaint against Chirkes, Catalina, and Littelfuse.  Count I is for declaratory judgment against Chirkes; Count II is for restitution against Chirkes; Count III is for patent infringement against Catalina; Count IV is for patent infringement against Littelfuse; and Count V is for breach of contract against Littelfuse.  (*See* Compl. ¶¶ 33–61).  Littelfuse has moved to dismiss Count V on the ground that Fusilamp, USA does not have standing and also to stay the entire litigation pending the outcome of the '138 Patent reexamination.  (*See* Mot.).

## II.  ANALYSIS

### A.      Standing

As stated, Count V of the Complaint is for breach of contract against Littelfuse.  The contract at issue is the Settlement Agreement that Fusilamp Panama and MA-Gianelli entered into with Catalina in October 2003.  (*See id.* ¶¶ 17, 55).  Fusilamp, USA alleges that Catalina and Littelfuse, as successor in interest, breached the Settlement Agreement by not paying royalties due under the Settlement Agreement since July 2006, while still utilizing the '138 Patent.  (*See id.* ¶¶ 56–58).  Littelfuse asserts, however, that Fusilamp, USA does not have standing to sue for beach of contract because Fusilamp, USA has failed to plead sufficient facts to show it has an interest in the Settlement

3

CASE NO. 10-20528-CIV-ALTONAGA/Brown

Agreement.  (*See* Mot. 4).  Specifically, Littelfuse asserts Fusilamp, USA was not a party to the

Settlement Agreement, and also that Fusilamp, USA has failed to allege any facts indicating it was

ever assigned an interest in the Settlement Agreement.  (*See id.* 4–6).

In response, Fusilamp, USA argues that it received an interest in the Settlement Agreement

when Fusilamp Panama and the Gianellis assigned ownership of the '138 Patent to Fusilamp, USA

on February 5, 2010.  (*See* Opp'n [D.E. 17] 2).  Specifically, Fusilamp, USA points to the following

language in its Complaint regarding the '138 Patent assignment to counter Littelfuse's assertion:

"[O]n February 5, 2010 Fusilamp Panama, owner of fifty percent (50%) of the '138 Patent, and . .

. [the Gianellis] . . . , collectively owners of the remainder [sic] fifty percent (50%), assigned all

rights, title and interest, past, present, and future, in and to the '138 Patent to Fusilamp."  (*Id.*

(quoting Compl. ¶ 31)).  According to Fusilamp, USA, the phrase "all past right in and to the '138

Patent" encompasses its right to the money owed under the Settlement Agreement.  (*See id.*).  These

are the only facts in the Complaint regarding Fusilamp, USA's interest in the Settlement Agreement.

 For a plaintiff to having standing it,

> (1) [ ] must have suffered an injury in fact — an invasion of a legally protected
> interest which is (a) concrete and particularized and (b) actual or imminent, not
> conjectural or hypothetical; (2) there must be a causal connection between the injury
> and the conduct complained of — the injury has to be fairly traceable to the
> challenged action of the defendant, and not the result of the independent action of
> some third party not before the court; and (3) it must be likely as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) [alterations, citations, and internal quotation

marks omitted])).

CASE NO. 10-20528-CIV-ALTONAGA/Brown

The plaintiff must plead sufficient facts in its complaint to establish standing, and the Court cannot "speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991)); *see also Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Additionally, "a party's standing to sue is generally measured at the time of the complaint." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1267 (11th Cir. 2001) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1286–87 (11th Cir. 2001)).

To satisfy the first element of standing, Fusilamp, USA must show it had a "legally protected interest" that was violated by Littelfuse. Fusilamp, USA asserts it has a "legally protected interest" in the Settlement Agreement that was allegedly breached by Littelfuse when it failed to pay royalties on the '138 Patent. Fusilamp, USA contends it received this "legally protected interest" when it was assigned the '138 Patent. However, according to the allegations in the Complaint, the Settlement Agreement and the '138 Patent are separate and distinct from each other. While the '138 Patent was assigned to Fusilamp, USA, the Settlement Agreement was entered into and pertains to the former owners of the '138 Patent and Catalina, and not Fusilamp, USA. The Court would be entering the realm of speculation to interpret the language Fusilamp, USA cites as sufficient to show, through the '138 Patent assignment, that Fusilamp, USA was assigned any interest in the Settlement Agreement. Fusilamp, USA was not a party, nor does it allege it was assigned any interest to the Settlement Agreement.

To have standing to sue as a non-party, Fusilamp, USA must show it was an intended third-

5

CASE NO. 10-20528-CIV-ALTONAGA/Brown

party beneficiary of the Settlement Agreement. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981–82 (11th Cir. 2005). Whether a non-party qualifies as an intended third-party beneficiary is a question of state law. *See id.* at 981. Florida law requires that the "direct and primary object of the contracting parties was to confer a benefit on the third party. If the contracting parties had no such purpose in mind . . . the third party has no legally enforceable right in the subject matter of the contract." *Id.* at 982 (citations omitted). Fusilamp, USA does not allege that the parties to the Settlement Agreement had a "direct and primary object" to benefit Fusilamp, USA. In fact, Fusilamp, USA was not even in existence when the Settlement Agreement was entered into. (*See* Opp'n 2).

Fusilamp, USA was not a party to the Settlement Agreement; therefore, Fusilamp, USA does not have a "legally protected interest" in the Settlement Agreement. Nor is it alleged that Fusilamp, USA was an intended third-party beneficiary of the Settlement Agreement. As a result, Fusilamp, USA has not suffered a legally cognizable injury by Littelfuse's alleged breach of contract. Since Fusilamp, USA has failed to satisfy the first element of standing there is no need to analyze the remaining elements. The Court grants Littelfuse's motion to dismiss Count V without prejudice.

**B.     Motion to Stay**

In addition, Littelfuse moves to stay the entire litigation until completion of the '138 Patent reexamination. (*See* Mot. 2). Littelfuse argues that the '138 Patent is invalid because the USPTO failed to consider "an abundance of prior art" when it originally granted the '138 Patent to Jaronczyk. (*See id.* 8). Therefore, Littelfuse contends that the Court should stay the case to avoid litigating matters that may become moot or be substantially changed based on the outcome of the '138 Patent

6

CASE NO. 10-20528-CIV-ALTONAGA/Brown

reexamination.  (*See id.*).

Fusilamp, USA opposes the stay for a number of reasons.  First, Fusilamp, USA states that Littelfuse has failed to show the required "hardship or inequality" if the stay is not issued in this case. (*See* Opp'n 3).  Next, Fusilamp, USA contends it is speculative to assert the reexamination process will moot or substantially change the issues in the litigation.  (*See id.* 4, 8–9).  Fusilamp, USA also asserts that granting the stay would delay its right to have its claims heard before the exclusivity period expires on the '138 Patent.  (*See id.* 9–10).  Last, Fusilamp, USA contends its right to a just and speedy determination would be delayed because the reexamination request is an attempt by Littelfuse to delay and preempt the patent infringement suit.  (*See id.* 5–6).  To support its final argument, Fusilamp, USA cites *ex parte* reexamination filing data that explains, "the average reexamination pendency is 25.4 months with the possibility of an additional 24 months of appellate review."  (*Id.* 9).

In deciding whether to issue a stay, the Court must examine "both the scope of the stay (including its potential duration) and the reasons cited."  *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262,1264 (11th Cir. 2002) (citing *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)).  A stay cannot be granted if it is found to be "immoderate of an indefinite duration." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).  "'[A] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.'"  *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)).

In the specific context of a patent reexamination, courts have examined three factors: "(1)

7

CASE NO. 10-20528-CIV-ALTONAGA/Brown

whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Roblor Mktg. Group, Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1347 (S.D. Fla. 2008) (citing *Baxa Corp. v. ForHealth Techs., Inc.*, No. 06-1015, 2006 WL 4756455, at *1 (M.D. Fla. May 5, 2006)).  Littelfuse and Fusilamp, USA battle chiefly over the three factors laid out in *Roblor Marketing Group, Inc.*.  The second and third factors seem to favor Littelfuse, as a stay may simplify the issues in the case and discovery is in its inception.  A lengthy discussion is not warranted here, however, since the primary justification for proposed the stay put forth by Littelfuse  –  namely judicial economy  –  do not outweigh the concerns over the indefiniteness of the proposed stay.  *See Ortega Trujillo*, 221 F.3d at 1265 ("[T]he interests of judicial economy alone are insufficient to justify such an indefinite stay.").

District courts have an inherent power to manage their dockets and are in no way required to stay an ongoing litigation pending a patent reexamination.  *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  To grant Littelfuse's request would be to stay the entire litigation until the USPTO completes its review.  The requested stay would only expire once the USPTO completes its reexamination and the appellate process has been exhausted as well.  *See Ortega Trujillo*, 221 F.3d at 1264 (concluding that a stay was indefinite because it would be in place until the conclusion of the trial and the appellate process of another tribunal).  Additionally, the Court cannot be assured that the reexamination process will proceed quickly; as Fusilamp, USA points out, the reexamination process takes on average 25.4 months to complete, and another 24 months on average for appeals.  *See CTI-Container Leasing Corp.*, 685 F.2d at 1288 (determining

8

CASE NO. 10-20528-CIV-ALTONAGA/Brown

a stay to be indefinite when accurate predication of the length of the stay would be difficult); *Hines*,

531 F.2d at 732 (describing a stay issued by a district court as "indefinite in duration" when the

likelihood was that the stay would remain in effect for anywhere between 18 months and 5 years).

In sum, the length of the stay, if issued in this case, appears to be indefinite, and as such, is

immoderate and unlawful. *See CTI-Container Leasing Corp.*, 685 F.2d at 1288.

### III.  CONCLUSION

For the reasons herein, it is **ORDERED AND ADJUDGED** as follows:

1.    The Motion **[D.E. 15]** is **GRANTED in part** and **DENIED in part**.

2.    Count V of the Complaint is **DISMISSED WITHOUT PREJUDICE**.  If it chooses,

Fusilamp, USA may file an Amended Complaint consistent with this Order by **June 18,**

**2010**.

3.    The requested stay is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of June, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

9