UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20528-CIV-ALTONAGA/Brown

**FUSILAMP, LLC**, *et al.*,

    Plaintiffs,

vs.

**LITTELFUSE, INC.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Catalina Performance Accessories, Inc.'s ("Catalina['s]") Motion to Compel Arbitration and to Stay its Obligation to Respond to the Complaint ("Motion") [ECF No. 62], filed July 15, 2010. Catalina requests the Court compel Plaintiffs, Fusilamp, LLC ("Fusilamp USA") and Fusilamp S.A. ("Fusilamp Panama") (collectively, "Fusilamp"), to arbitrate their claims against Defendants, Littelfuse, Inc. ("Littelfuse") and Catalina, regarding United States Patent No. 5,598,138 (the "'138 Patent"). The Court has considered the parties' written submissions and applicable law.

### I. BACKGROUND

Originally issued in 1997 by the United States Patent and Trademark Office ("PTO") to Joseph P. Jaronczyk, Jr. ("Mr. Jaronczyk"), the '138 Patent is for a "Fault-Indicating Blade Fuse," an innovative fuse typically used in automotive applications to indicate failure by illumination. (*See* Second Am. Compl. ¶ 14 [ECF No. 44]). Mr. Jaronczyk later sold the '138 Patent, in equal parts, to Miguel Angel Gianelli ("Gianelli") and Norberto Julio Chirkes ("Chirkes"). (*See id.* ¶ 15).

Case No. 10-20528-CIV-ALTONAGA/Brown

In September 2001, Chirkes allegedly sold his fifty percent interest in the '138 Patent to Fusilamp Panama, but subsequently, in 2002, granted Catalina an exclusive license to the '138 Patent. (*See id.* ¶¶ 19, 21). Litigation ensued between Fusilamp Panama, Gianelli and Catalina over the parties' rights to the '138 Patent. (*See id.* ¶ 22).

In October 2003, the parties enter into a binding settlement agreement (the "Agreement") before the United States District Court for the Southern District of New York. (*See id.*). The Agreement was read into the record by Magistrate Judge Andrew J. Peck, and the parties assented to the Agreement on the record. (*See* Mot. Ex. A ("Tr.") 3:1–16:2 [ECF No. 62-1]). Under the terms of the Agreement, Catalina received an exclusive license ("License") from Fusilamp Panama to manufacture, market, distribute, and sell fuses utilizing the '138 Patent's technology in the United States. (*See id.* 3:16–19). In exchange for the License, Catalina agreed to pay monthly royalty payments of $5,000 to Gianelli and Fusilamp Panama. (*See id.* 3:20–25). The License was to be in effect for the duration of the '138 Patent, however, the License could also be terminated if Catalina's payments were 75 days in arrears, provided Gianelli and Fusilamp Panama first notified Catalina and allowed Catalina five business days to cure its default. (*See id.* 3:16–19, 10:16–23).

The Agreement also allowed Catalina to "commence whatever legal or equitable actions it deem[ed] prudent to protect the patent in the United States and/or to protect Catalina's rights." (*Id.* 7:18–23). If Catalina initiated litigation, it could deduct the cost and expenses of such litigation against its monthly royalty obligations, provided Catalina first notified Gianelli and Fusilamp sixty days before commencing the proceedings. (*See id.* 7:24–8:14). Most importantly, the parties also agreed to negotiate any disagreement in good faith, but if negotiations proved unsuccessful, to submit "any dispute arising between [the] parties under this license agreement and settlement

Case No. 10-20528-CIV-ALTONAGA/Brown

agreement . . . [to] arbitration by a single arbitrator under the auspices of the American Arbitration Association out of their arbitration office in New York City." (*Id.* 5:24–6:3).

In April 2006, Catalina notified Gianelli it was planning to initiate a patent infringement suit against Littelfuse and would be withholding monthly royalty payments to offset the incurred and expected litigation costs. (*See* Second Am. Compl. ¶¶ 25–26). However, a few months later, Catalina was acquired by Littelfuse for $4.5 million. (*See id.* ¶¶ 29–30). On July 1, 2006, Fusilamp Panama and Gianelli did not receive the monthly royalty payment. (*See id.* ¶ 31). Two weeks later – on July 1, 2006 – Littelfuse attempted to wire $5,000 to Fusilamp Panama, but the funds were rejected and returned. (*See id.* ¶ 32). No further payments were made by either Catalina or Littelfuse. (*See id.*). Then on January 15, 2010, roughly 41 months after Littelfuse's royalty payment was rejected, Fusilamp Panama sent notice to Littelfuse and Catalina giving them five days to pay the royalties in arrears or suffer termination of the License. (*See id.* ¶¶ 32, 34). On January 25, 2010, Fusilamp Panama notified Littelfuse and Catalina the License was terminated and recorded the release with the PTO. (*See id.* ¶¶ 35–36). The next month, Fusilamp Panama and the Gianellis[1] assigned "all rights, title and interest . . . to the '138 Patent to Fusilamp USA." (*Id*. ¶ 37).

Fusilamp USA initially filed its Complaint [ECF No. 1] alleging patent infringement, declaratory judgment, and breach of contract on February 19, 2010. On July 1, 2010, after filing an amended complaint, Fusilamp USA and Fusilamp Panama filed a Second Amended Complaint alleging nine counts against six defendants. The Plaintiffs seek declaratory judgment and restitution

---

[1] Prior to this assignment, Gianelli sold his fifty percent interest, in equal parts, to Alfredo Eduardo Gianelli, Mariano Gianelli, and Diego Gianelli (collectively, the "Gianellis"). (*See id.* ¶ 20).

against Chirkes[2] (Counts I and II); patent infringement against Catalina, Littelfuse, Advanced Auto Parts, Inc. ("Advanced Auto"), Autozone, Inc. ("Autozone"), and Pep Boys–Manny, Moe & Jack, Inc. ("Pep Boys") (Counts III–IV, VII–IX, respectively); breach of contract against Littelfuse (Count V); and false marketing against Catalina and Littelfuse (Count VI). (*See id*. ¶¶ 39–86). Pursuant to the arbitration clause of the Agreement, Catalina now seeks to compel Fusilamp to arbitrate the claims against Littelfuse and Catalina and to stay the litigation pending the outcome of arbitration. (*See* Mot. 1–2).

## II. ANALYSIS

Catalina seeks to compel arbitration of this dispute pursuant to federal law. (*See id.* 1). Fusilamp maintains the Motion to Compel Arbitration should not be granted because the Agreement was effectively terminated on January 25, 2010 when the "rightful owners" of the '138 Patent "notified, revoked, and terminated . . . Catalina's license to usufruct the '138 Patent." (Resp. 2 [ECF No. 80]). Three issues must be addressed by the Court: (1) whether federal or state law applies to the Agreement and the arbitration clause; (2) whether the arbitration clause is effective; and (3) if arbitration is compelled, whether a stay of this case is appropriate.

**A.     Choice of Law Issues**

Catalina brings its Motion "pursuant to the Federal Arbitration Act, 9 U.S.C. Sections 1–16," and refers to the Federal Arbitration Act (the "FAA") and cases involving the FAA throughout its Reply. (Mot. 1; *see* Reply 1–7 [ECF No. 84]). In its Response, Fusilamp also cites cases invoking federal law and the FAA. However, the Agreement is silent on whether state or federal law applies to this dispute.

---

[2] Chirkes was dismissed from the case without prejudice [ECF No. 99] on September 1, 2010.

Case No. 10-20528-CIV-ALTONAGA/Brown

Section two of the FAA provides: "[A]n agreement *in writing* to submit to arbitration an existing controversy . . . shall be valid." 9 U.S.C. § 2 (emphasis added). Clearly, the FAA requires the arbitration agreement be in writing. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368–69 (11th Cir. 2005) (noting a valid arbitration agreement must be in writing). The arbitration agreement between the parties in this case was formalized in open court, and although the parties have provided a transcript of the proceeding, they have not produced a written agreement. *See DDI Architects, P.C. v. Dale*, No. 00-CV-3262, 2000 WL 1146616, at *2 (E.D. Pa. Aug. 10, 2000) (finding the FAA did not apply to an arbitration agreement dictated in open court and never reduced to writing). Accordingly, the FAA is inapplicable to the parties' Agreement.

State law, therefore, determines whether Fusilamp's claims against Catalina and Littelfuse are arbitrable. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 595–96 (3d Cir. 2004). Absent a specific contractual provision to the contrary, Florida conflict-of-law rules require courts apply *lex loci contractus,* or the law of the state where the contract was made, to contract questions. *See Shaps v. Provident Life & Acc. Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001). The parties entered into the Agreement in the State of New York, and the Agreement does not contain a choice-of-law provision. Thus, the Court looks to New York's law on arbitration to determine whether arbitration should be compelled in this matter.

New York arbitration law provides, "[a] *written agreement* to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." N.Y. C.P.L.R. § 7501 (McKinney 2010) (emphasis added). New York courts have interpreted "written agreement" to include an oral arbitration agreement made

Case No. 10-20528-CIV-ALTONAGA/Brown

in open court and duly recorded. *See Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin, P.C. v. Richardson*, 672 N.Y.S.2d 87, 88 (N.Y. App. Div. 1998) (recognizing a stipulation made in open court as an agreement to arbitrate). To be made in "open court" requires "transcribed proceedings in chambers." *Sontag v. Sontag*, 495 N.Y.S.2d 65, 66 (N.Y. App. Div. 1985). These requirements are satisfied in the instant case as the court read the Agreement into the record on October 10, 2003, and the parties have provided the Court with a transcript of that proceeding in which they stipulated to an agreement to arbitrate.

**B.      The Effectiveness of the Arbitration Clause**

Fusilamp maintains its claims are not subject to arbitration because the arbitration clause "did not survive the expiration of the Agreement." (Resp. 2). Catalina disagrees, contending Fusilamp cannot avoid arbitration by unilaterally terminating the Agreement. (*See* Reply 2). Alternatively, Catalina asserts arbitration should be compelled under the Agreement because the dispute arose before the Agreement was terminated. (*See id.* 3–5).

Under New York law, the judicial inquiry ceases and arbitration is compelled if "[1] the parties made a valid agreement to arbitrate, [2] . . . the dispute sought to be arbitrated falls within its scope, and [3] . . . there has been compliance with any agreed on conditions precedent to arbitration." *Matter of Cnty. of Rockland (Primiano Constr. Co.)*, 409 N.E.2d 951, 954 (N.Y. 1980) (numeration added). Even disputes over contract termination are decided by the arbitrator. *See Lipman v. Haeuser Shellac Co., Inc.*, 43 N.E.2d 817, 819 (1942) ("[A]ll acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators."); *Matter of Douglas Rauch, Inc. (Regna)*, 614 N.Y.S.2d 330, 330 (N.Y. App. Div. 1994) (whether agreement was terminated before a demand for arbitration is an

issue for the arbitrator); *Matter of Vann v. Kreindler, Relkin & Goldberg*, 434 N.Y.S.2d 365, 369 (N.Y. App. Div. 1980) ("It is now settled that all issues of termination are for the arbitrators to decide.") (citation omitted); *Matter of Black & Pola ( Manes Org.)*, 421 N.Y.S.2d 6, 7 (N.Y. App. Div. 1979) ("Once the agreement to arbitrate is established . . . the question of termination and abandonment of the contract is exclusively for the arbitrators.") (citations omitted).

There is no doubt the first requirement is met because the parties explicitly and knowingly entered into the Agreement, which included a very broad arbitration clause providing "any dispute under this license agreement and settlement agreement will be heard by arbitration." (Tr. 14:3–16:2, 5:20–6:1). The second requirement, that the dispute fall within the scope of the Agreement, is also satisfied. The breach of contract claim alleges a breach of the Agreement, which certainly falls within the "any dispute" scope of the arbitration clause. *See Project Orange Assocs., LLC v. Gen. Elec. Int'l, Inc.*, 872 N.Y.S.2d 857, 862 (N.Y. Sup. Ct. 2009) (finding a dispute clearly within the scope of an arbitration agreement where plaintiff sued for breach of the very contract that contained an arbitration clause). The remaining claims of patent infringement and false marketing arise only because the parties are no longer operating under the License and Agreement, which Catalina contends were improperly terminated. Accordingly, these claims also have a direct relationship to the Agreement and are also within the scope of the arbitration clause. *See Concille v. Weingarten*, No. 104798/2007, 2010 WL 521122, at *1 (N.Y. Sup. Ct. Jan. 7, 2010) ("Where arbitration agreements are broad in scope, they can easily encompass the claims disputed between the parties.") (citation omitted). Finally, the third requirement is also satisfied because no conditions precedent are addressed in the Agreement that would prevent the parties from arbitrating their dispute.

Plaintiffs maintain their claims are not subject to arbitration because the arbitration clause

"did not survive the expiration of the Agreement." (Resp. 2). In support of its position, Fusilamp relies on three cases: *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991); *Adelphia Recovery Trust v. Bank of Am., N.A.*, No. 05 Civ. 9050(LMM), 2009 WL 2031855 (S.D.N.Y. July 8, 2009); *Azuna, LLC v. Netpia.com, Inc.*, No. 08-776, 2008 WL 4787589 (E.D. Pa. Oct. 30, 2008). These cases are inapplicable because the decisions interpret the FAA and not New York law. More importantly, what is at issue is whether Fusilamp properly terminated the License under the Agreement, an issue explicitly reserved for the arbitrator under both the parties' Agreement and New York law. *See Lipman*, 43 N.E.2d at 819; *Douglas Rauch Inc.*, 614 N.Y.S.2d at 330; *Vann*, 434 N.Y.S.2d at 369; *Black & Pola*, 421 N.Y.S.2d at 7.

C.     **Whether Litigation Should be Stayed Pending Arbitration**

Catalina also requests the proceedings be stayed during the pendency of arbitration. The Court need not address whether to apply Florida or New York law in deciding this issue because the laws of both states are virtually identical. In both states, a court's order compelling arbitration operates to stay the arbitrable issues pending arbitration. *See* N.Y. C.P.L.R. § 7503(a) (McKinney's 2010); Fla. Stat. § 682.03(3). Additionally, whether a court should stay nonarbitrable claims depends on the relationship between the arbitrable and nonarbitrable claims. *See Cnty. Glass & Metal Installers, Inc. v. Pavarini McGovern, LLC*, 885 N.Y.S.2d 288, 289 (N.Y. App. Div. 2009) (arbitrable and nonarbitrable claims should be stayed if the claims are "'inextricably interwoven'") (citation omitted); *Ramon Pacheco & Assoc., Inc. v. Betancourt Castellon Assoc., Inc.*, 820 So. 2d 948, 952–53 (Fla. 3d DCA 2002) (finding a nonarbitrable claim should be stayed because liability was contingent upon the outcome of a claim that was proceeding to arbitration).

Because the issues between Catalina, Littelfuse, and Fusilamp are subject to arbitration,

Case No. 10-20528-CIV-ALTONAGA/Brown

Counts III–VI must be stayed pending the outcome of arbitration. Fusilamp's remaining claims against Advanced Auto, Autozone, and Pep Boys are nonarbitrable because these Defendants are not parties to the Agreement. However, Fusilamp's claims against these Defendants — Counts VII, VIII, and IX alleging patent infringement of the '138 Patent — are closely related to and dependent upon the arbitrable claims. For example, Fusilamp alleges Littelfuse is infringing the '138 Patent by selling products that incorporate the '138 Patent's technology to Advanced Auto, Autozone, and Pep Boys. If the arbitrator finds Littelfuse is not infringing the '138 Patent, then neither are the other Defendants. Staying these claims will conserve judicial resources, the resources of the parties, and prevent the possibility of inconsistent outcomes in different forums.

### III. CONCLUSION

Consistent with the foregoing analysis, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Compel Arbitration **[ECF No. 62]** is **GRANTED**.

2. The parties shall proceed to arbitration pursuant to the terms of their Agreement.

3. This case is **STAYED** pending the outcome of arbitration.

4. The Clerk is instructed to administratively **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of September, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record